# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>(1) a Microsoft Xbox Console with serial number 106520753548; (2) an Apple iPhone described as having a white border with a blue case; and (3) a HP laptop computer with serial number CND5226212, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  2:19-MJ-5299 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A | Stalking |
| 18 U.S.C. §§ 875(c), (d) | Transmitting Threat Through Interstate Communications |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (*give exact ending date if more than 30 days*: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clint Wilmsen, FBI, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state:  Los Angeles, CA

Michael Wilner, U.S. Magistrate Judge

*Printed name and title*
AUSA: Aron Ketchel x1019

**ATTACHMENT A**

ITEMS TO BE SEARCHED

     The three items to be searched include: (1) a Microsoft Xbox Console with serial number 106520753548; (2) an Apple iPhone described has having a white border with a blue case; and (3) a HP laptop computer with serial number CND5226212 (collectively the "SUBJECT DEVICES").  The SUBJECT DEVICES are currently in the custody of Pomona Police Department in Pomona, California, within the Central District of California.

**ATTACHMENT B**

I. **ITEMS TO BE SEIZED**

    1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 2261A (Stalking); 18 U.S.C. §§ 875(c), (d) (transmitting a threat through interstate communications), (collectively, the "Subject Offenses"), namely:

        a.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that refer to activities or materials related to the Subject Offenses, including documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any nude images or videos.

        b.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, tending to identify persons involved in the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any nude images or videos.

        c.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, which refer to or may identity victims of the Subject Offenses.

        d.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, which may be used to threaten, extort, or otherwise influence victims of the Subject Offenses including, but not limited to,

ii

images, videos, personal information, and other information regarding victims' families and/or friends.

        e.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that pertain to accounts with any Internet Service Provider.

        f.   Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

        g.   With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

            i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

            ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

            iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.   records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II. SEARCH PROCEDURE FOR DIGITAL DEVICES

3.    In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.    The search team shall complete the search of the SUBJECT DEVICE(S) as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without obtaining an extension of time order from the Court.

d.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the

scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

           ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

           iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques [, including to search for known images of child pornography.]

        e.  If the search team, while searching a SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

        f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g.     If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.     If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.     The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.     After the completion of the search of the SUBJECT DEVICE(S), the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

4.     The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

vii

Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

     5.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

## AFFIDAVIT

I, Clint Wilmsen, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since December 2002.  As an FBI SA, I received training at the FBI Academy and other law enforcement training venues.  I was trained to manage and run criminal investigations, including online investigations utilizing the identification and research of social media, along with email and IP address tracking and analysis.  I received a Bachelor of Arts degree in English from California State Polytechnic University, Pomona, and a Juris Doctorate degree from the University of California, Los Angeles.  I am currently assigned to the FBI's Los Angeles Field Office, West Covina Resident Agency, where my duties include the investigation of federal crimes.  During my employment with the FBI, I have participated in numerous investigations involving complex federal crimes, including international investment schemes, government program fraud, public corruption, national security, online extortion, and child pornography.  I have conducted interviews, IP address research and analysis, search warrant executions, evidence collection, interviews, and evidence review in support of child pornography investigations.

### II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of an application for a warrant to search three digital devices: (1) a Microsoft

Xbox Console with serial number 106520753548 ("Microsoft Xbox");
(2) an Apple iPhone described as having a white border with a
blue case ("Apple iPhone"); and (3) a HP laptop computer with
serial number CND5226212 ("HP Laptop") (collectively the
"SUBJECT DEVICES"), as further described in Attachment A.  The
SUBJECT DEVICES are all currently in custody of the Pomona
Police Department ("PPD") in Pomona, California, within the
Central District of California.

3.    The requested warrant seeks authorization to seize
evidence, fruits, and instrumentalities of violations of 18
U.S.C. § 2261A (Stalking); 18 U.S.C. §§ 875(c), (d)
(transmitting a threat through interstate communications)
(collectively, the "Subject Offenses"), as described further in
Attachment B, which are also incorporated herein by reference.

4.    The statements contained in this affidavit are based
on the following, among other things: (a) information provided
by FBI SAs; (b) written reports about this and other
investigations received, directly or indirectly, from other law
enforcement agents; (c) information gathered from the service of
administrative subpoenas; (d) the results of physical and
electronic surveillance conducted by law enforcement agents;
(e) independent investigation and analysis by FBI SAs/analysts,
and computer forensic professionals; and (f) my own experience,
training and background as an FBI SA.

5.    The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from various law enforcement personnel and

witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

6.    As set forth below, beginning on or about April 13, 2016, and continuing to on or about April 27, 2019, JORGE ESTEBAN SANCHEZ RAMOS ("SANCHEZ") engaged in a course of conduct in violation of the Subject Offenses.  On May 24, 2019, a federal grand jury in the Central District of California returned an indictment charging SANCHEZ with four counts of violating 18 U.S.C. §§ 2261A(2)(B) (Stalking), and an arrest warrant for SANCHEZ was issued.  On August 15, 2019, SANCHEZ was arrested by the FBI with the assistance of PPD Detectives. Based on SANCHEZ's consent, PPD seized items SANCHEZ used to access the Internet, specifically the SUBJECT DEVICES.  During an interview, SANCHEZ discussed threatening approximately fifteen women online via Facebook in order to obtain nude images.  SANCHEZ stated that he used the Apple iPhone seized by PPD Detectives to threaten women for approximately the previous two years.  The SUBJECT DEVICES are located at the PPD evidence facility and have not been searched.  Although SANCHEZ initially signed a form consenting to the search of the SUBJECT DEVICES, SANCHEZ's counsel informed the government that he has

3

withdrawn his consent, which is why I now seek a warrant to search the SUBJECT DEVICES.

## IV. STATEMENT OF PROBABLE CAUSE

7.    I know the following information through my review of records, my investigation, my conversations, and my conversations with other investigators on this case:

**A.    SANCHEZ Investigation and Criminal Charges**

8.    Beginning on or about April 13, 2016, and continuing to on or about April 27, 2019, SANCHEZ engaged in a course of conduct in violation of the Subject Offenses.  While specific acts varied with separate victims, generally, SANCHEZ obtained nude images of victims, then threatened to share those nude images with the victim's family, friends and/or the public unless the victims provided additional nude content.  SANCHEZ utilized multiple Facebook accounts and various names in a manner designed to hide his true identity and defeat victim efforts to avoid and escape his conduct.

9.    On May 24, 2019, a federal grand jury in the Central District of California returned an indictment charging SANCHEZ with four counts of 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5): Stalking (CR 19-319-DMG) (the "Indictment").  Also, on May 24, 2019, the Honorable Alexander F. MacKinnon, United States Magistrate Judge issued an arrest warrant for SANCHEZ pursuant to the Indictment.  A copy of the Indictment is attached as an exhibit to my affidavit for the Court's convenience.

**B.    SANCHEZ Arrest, Evidence Collection, and Interview**

10.   On August 15, 2019, SANCHEZ was arrested by the FBI pursuant to the federal arrest warrant at 10838 Vernon Avenue, Trailer 2, Ontario, California (the "Residence").

11.   Also present at the arrest was PPD Detectives Childers and Lee (the "PPD Detectives").  SANCHEZ provided the PPD Detectives with consent to enter the Residence in order to retrieve items SANCHEZ utilized to access the internet, specifically the SUBJECT DEVICES.  SANCHEZ signed a PPD Entry and Search Waiver, which granted full and unconditional authority to PPD to enter the Residence and conduct a search for any electronic devices and conduct any related investigation. While still at the Residence, prior to being Mirandized, SANCHEZ provided PPD Detectives with the passwords for the Apple iPhone and HP Laptop.  PPD Detectives unlocked the Apple iPhone with the password provided by SANCHEZ and turned off the device. SANCHEZ stated that the Xbox Console did not have a password.  A PPD Field Property Receipt for the SUBJECT DEVICES was left at the Residence.  PPD Detectives transported the SUBJECT DEVICES to the PPD evidence facility where they were appropriately secured.  The SUBJECT DEVICES have not been searched to date.

12.   On August 15, 2019, and subsequent to his arrest, I transported SANCHEZ to the FBI West Covina, California office and interviewed SANCHEZ.  I advised SANCHEZ of his Miranda Rights, SANCHEZ stated that he understood those rights, and SANCHEZ signed an FBI Advice of Rights form indicating he was willing to answer questions.  During the interview, SANCHEZ

discussed threatening women online via Facebook in order to obtain nude images.  SANCHEZ stated he engaged in this activity from approximately one year after he graduated high school (in approximately 2014) until approximately one month before his arrest.  SANCHEZ estimated he threatened about 15 women online ranging in age from 18 to 30 years old using multiple Facebook profiles.  SANCHEZ stated that he used the Apple iPhone seized by PPD Detectives to threaten women for approximately the previous two years.  SANCHEZ provided the password to the Apple iPhone.  SANCHEZ described a hidden album on his Apple iPhone where he stored nude images he obtained from women online.

13.  On August 15, 2019, SANCHEZ made his initial appearance before the Honorable John E. McDermott, United States Magistrate Judge.  SANCHEZ was remanded into United States Marshall's custody pending trial, which is currently set to begin January 21, 2020.

14.  I understand that, following SANCHEZ's arrest, Assistant United States Attorney Aron Ketchel sought to confirm with SANCHEZ's counsel that SANCHEZ consented to the SUBJECT DEVICES.  On or around November 7, 2019, I learned from AUSA Ketchel that SANCHEZ was withdrawing his consent to search the SUBJECT DEVICES.  I am therefore seeking this warrant to search the SUBJECT DEVICES.

### V.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES

1.  As used herein, the term "digital device" includes the SUBJECT DEVICES.

2.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.    Based on my training and experience, I am aware that Windows XBox Consoles contain hardware such as a hard drive capable of storing electronic evidence in a similar manner as other digital devices.

c.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places

7

where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

d.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

e.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

3.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a

8

complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

15.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

///

9

## VI. <u>CONCLUSION</u>

16.  For all the reasons described above, there is probable cause to believe that evidence of violations of the Subject Offenses, as described above and in Attachment B of this affidavit, will be found in a search of the SUBJECT DEVICES, as described in Attachment A of this affidavit.

_____
Clint Wilmsen, Special Agent
FEDERAL BUREAU OF
INVESTIGATION

Subscribed to and sworn before me
this _____ day of December, 2019


_____
UNITED STATES MAGISTRATE JUDGE